IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF WEST VIRGINIA
MARTINSBURG

**TOMMY E. GOODSON,**

    **Plaintiff,**

v.                                                      **CIVIL ACTION NO.: 3:22-CV-141**
                                                                     **(GROH)**

**UNITED STATES OF AMERICA,**

    **Defendant.**

## REPORT AND RECOMMENDATION

### I. INTRODUCTION

On August 22, 2022, the *pro se* Plaintiff, a federal prisoner incarcerated at FCI Gilmer, in Glenville, West Virginia, initiated this case by filing a complaint with the Clerk. ECF No. 1.[1] Plaintiff claims he is entitled to damages pursuant to the Federal Tort Claims Act, 28 U.S.C. § 2671, for acts which allegedly occurred at FCI Gilmer in the Northern District of West Virginia. Id. Plaintiff paid the initial partial filing fee on September 26, 2022. ECF No. 12.

The matter is now before the undersigned for a Report and Recommendation to the District Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and LR PL P 2. For the reasons set forth below, the undersigned recommends that the complaint be denied and dismissed without prejudice.

---

[1] All CM/ECF numbers cited herein are from the instant case, 3:22-CV-141, unless otherwise noted.

## II.   FACTUAL AND PROCEDURAL HISTORY

### A.   Claims in the Complaint

The complaint alleges that on or about May 11, 2020, the Bureau of Prisons ("BOP") enacted its BOP Guidance ("the Guidance") on Aerosol Generating Procedures ("AGPs").[2] ECF No. 1 at 6. Plaintiff contends that he is morbidly obese and suffers from hypertension, high cholesterol, diabetes, schizophrenia, depression, glaucoma, cataracts, shortness of breath, and headaches. Id. at 13. Further, Plaintiff has "severe sleep apnea" which requires him to use a CPAP machine. Id. However, Plaintiff asserts that BOP employees, including the former warden, chose not to implement the Guidance on AGPs. Id. at 14. Plaintiff claims that BOP employees intentionally concealed the Guidance from inmates, and that a fellow inmate informed him about the Guidance. Id. at 15.

As a result of the action or inaction of BOP employees, Plaintiff contends that he suffered the following injuries: severe and acute mental suffering, anxiety, psychological distress, psychosocial distress, physical pain and discomfort, emotional pain and discomfort, high blood pressure, panic attacks, night sweats, headaches, insomnia, erectile dysfunction, emotional numbness, chronic fatigue, brain fog, coughing, memory loss, joint and muscle pain, and sore throat. Id. at 17 – 18. Plaintiff did not allege that he contracted COVID-19. Plaintiff seeks $20,000,000.00 (twenty million dollars) in compensatory damages. ECF No. 1 at 9.

---

[2] See https://www.bop.gov/foia/docs//COVIDAerosolGuidanceMay8.pdf, "BOP Guidance of Aerosol Generating Procedures (AGPs)" dated May 8, 2020, and revised on May 11, 2020. The May 11, 2020, version bears the notation "Version 1.1" in the lower left corner of each page.

### B.     Motion to Dismiss for Lack of Jurisdiction

Defendant filed a motion to dismiss for lack of jurisdiction, accompanied by exhibits in support thereof, on December 19, 2022. ECF Nos. 23, 24, 24-1 through 24-4. Defendant argues that Plaintiff's complaint should be dismissed because the discretionary function exception to the FTCA, codified at 28 U.S.C. 2680(a), shields Defendant from liability. ECF No. 24 at 3. Defendant cites to the two-part test articulated in Rich v. United States, 811 F.3d 140 (4th Cir. 2015) to support its argument. ECF No. 24 at 4. Defendant argues that no federal statute, regulation, or protocol specifically described a course of action for Bureau of Prisons employees to follow in relation to COVID-19 protocols. Accordingly, because there was no specific directive, Defendant argues that the conduct of employees involved the exercise of judgment, or choice, and thus the first prong of Rich is met.

Further, Defendant argues that Plaintiff cannot meet the second prong of Rich because under Supreme Court precedent, the BOP's response to COVID-19 was a "multi-factored decision that required significant policy analysis," and " '[p]rison administrators … should be accorded wide-ranging deference in the adoption of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security.' " ECF No. 24 at 6, quoting Whitley v. Albers, 475 U.S. 312, 321-22 (1986). Defendant maintains that the "BOP's decision regarding how to administer its prisons during the COVID-19 pandemic is one inherently grounded in decisions of public policy." ECF No. 24 at 8. Accordingly, Defendant argues that the second prong of Rich is met, meaning that the discretionary function exception applies to Plaintiff's claim. ECF No. 24 at 8. Defendant thus argues that Plaintiff cannot meet either prong of the Rich test, that

3

the United States has not waived its sovereign immunity thereby precluding subject matter jurisdiction, and that Plaintiff's complaint should be dismissed. Id.

Finally, Defendant argues that the Government's sovereign immunity protects it from Plaintiff's claims, specifically based on 28 U.S.C. § 2680. ECF No. 24 at 8. Defendant contends that "Plaintiff's claims relating to the imposition, establishment, or handling of any quarantine or actions to carry out the purpose of a quarantine must be dismissed for lack of jurisdiction." Id.

### C.  Plaintiff's Response to Motion to Dismiss

On January 9, 2023, Plaintiff filed a Response to Defendant's motion to dismiss, and two exhibits. ECF Nos. 28, 28-1, 28-2. Therein, Plaintiff argues that his claims do not involve any discretionary function by BOP employees. ECF No. 28 at 1. According to Plaintiff, the BOP Guidance did not have an element of judgment or choice. Id. at 4.

Plaintiff argues that FCI Gilmer medical staff determined that Plaintiff needed to continue to use his CPAP machine, but failed to provide him with a non-vented CPAP mask or any inline viral filters during the duration of the pandemic, which would have mitigated the risk to himself to other inmates and staff. Id. at 9. Plaintiff further argues that BOP employees, specifically FCI Gilmer medical staff "intentionally, knowingly, and willfully chose to conceal the BOP Guidance . . . from the Plaintiff . . . and they chose to implement a blanket denial against 'all' of the BOP Guidance." Id. at 10. Plaintiff again asserted that he suffered "significant mental suffering and physical injuries which is clearly negligence" as a result of BOP employees' action or inaction. Id. at 11. Further, Plaintiff contends that "[q]uarantine situations do not apply here". Id. at 14.[3]

---

[3] In his Response, Plaintiff again fails to assert that he contracted COVID-19.

Plaintiff seeks a jury trial, an award of $20,000,000.00 in compensatory damages, a hearing, and be appointed counsel.[4] Id. at 15.

### III.   LEGAL STANDARD

#### A.   Review of Complaints

Pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and the Court's Local Rules of Prisoner Litigation Procedure, this Court is authorized to review such complaint and submit findings and recommendations to the District Court. This Court is charged to "hear and determine Plaintiff's case to determine "any pretrial matter pending before the court, except a motion for injunctive relief, for judgment on the pleadings, for summary judgment, to dismiss, . . . to dismiss for failure to state a claim upon which relief can be granted, and to involuntarily dismiss an action."

#### B.   Pro Se Litigants.

Courts must read *pro se* allegations in a liberal fashion. Haines v. Kerner, 404 U.S. 519, 520 (1972). However, a complaint is frivolous if it is without arguable merit either in law or in fact. Neitzke v. Williams, 490 U.S. 319, 325 (1989) (superseded by statute). The Supreme Court in Neitzke recognized that:

> Section 1915(d)[5] is designed largely to discourage the filing of, and waste of judicial and private resources upon, baseless lawsuits that paying litigants generally do not initiate because of the costs of bringing suit and because of the threat of sanctions for bringing vexatious suits under

---

[4] Plaintiff's request for appointment of counsel was denied by order entered on April 28, 2023. ECF No. 33.

[5] The version of 28 U.S.C. § 1915(d) which was effective when Neitzke was decided provided, "The court may request an attorney to represent any such person unable to employ counsel and may dismiss the case if the allegation of poverty is untrue, or if satisfied that the action is frivolous or malicious." As of April 26, 1996, the statute was revised and 28 U.S.C. § 1915A(b) now provides, "On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint-- (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief."

> Federal Rule of Civil Procedure 11. To this end, the statute accords judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless. Examples of the former class are claims against which it is clear that the defendants are immune from suit. . .

490 U.S. at 327.

### C. Actions Under the Federal Tort Claims Act (FTCA)

The FTCA is a comprehensive legislative scheme by which the United States has waived its sovereign immunity to allow civil suits for actions arising out of the negligent acts of agents of the United States. The United States cannot be sued in a tort action unless Congress has waived the government's sovereign immunity and authorized suit under the FTCA. Dalehite v. United States, 346 U.S. 15, 30-31 (1953). The provisions of the FTCA are found in Title 28 of the United States Code. 28 U.S.C. §§ 1346(b), 1402(b), 2401(b) and 2671-2680.

In 2021, the Supreme Court issued a decision which summarized the historical precedent which led to the enactment of the FTCA:

> The FTCA streamlined litigation for parties injured by federal employees acting within the scope of their employment. Before 1946, a plaintiff could sue a federal employee directly for damages, but sovereign immunity barred suits against the United States, even if a similarly situated private employer would be liable under principles of vicarious liability. Despite that immunity, the Government often would provide counsel to defendant employees or indemnify them. In addition, Congress passed private bills that awarded compensation to persons injured by Government employees. But by the 1940s, Congress was considering hundreds of such private bills each year. Critics worried about the speed and fairness with which Congress disposed of these claims.

> In 1946, Congress passed the FTCA, which waived the sovereign immunity of the United States for certain torts committed by federal employees acting within the scope of their employment. The Act in effect ended the private bill system by transferring most tort claims to the federal courts. Plaintiffs were (and are) required to bring claims under the FTCA in federal district court. Federal courts have jurisdiction over these claims if they are actionable under § 1346(b). A claim is actionable if it alleges the six elements of § 1346(b), which are that the claim be:
>
> [1] against the United States, [2] for money damages, ... [3] for injury or loss of property, or personal injury or death [4] caused by the negligent or wrongful act or omission of any employee of the Government [5] while acting within the scope of his office or employment, [6] under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.[6]

Brownback v. King, 141 S. Ct. 740, 746 (2021) (cleaned up and internal citations omitted).

An inmate "can sue under the FTCA to recover damages from the United States Government for personal injuries sustained during confinement in a federal prison, by reason of the negligence of a government employee." United States v. Muniz, 374 U.S. 150 (1963). The FTCA provides at § 2674 as follows:

> The United States shall be liable, respecting the provisions of this title relating to tort claims, in the same manner and to the same extent as a private individual under like circumstances, but shall not be liable for interest prior to judgment or for punitive damages.

However, the FTCA does not create a new cause of action. Medina v. United States, 259 F.3d 220, 223 (4th Cir. 2001). "The statute merely "permits the United States to be held

---

[6] 28 U.S.C. § 1346(b)(1) provides, "[T]he district courts ... shall have exclusive jurisdiction of civil actions on claims against the United States, for money damages ... for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred."

liable in tort in the same respect as a private person would be liable under the law of the place where the act occurred." Id.

Even where the government has waived sovereign immunity, the FTCA only authorizes lawsuits against the United States itself. 28 U.S.C. § 1346(b). Therefore, the United States, not any government employee or agency, is the only proper defendant in an FTCA lawsuit. See 28U.S.C. 2679(a); Webb v. Hamidullah, 281 F. App'x 159, 161 n. 4 (4th Cir. 2008) (per curiam) (unpublished) (United States is the only proper defendant in FTCA claim); Holmes v. Eddy, 341 F.2d 477, 480 (4th Cir. 1965) (per curiam) (federal agency cannot be sued pursuant to the FTCA); Allfgeir v. U.S., 909 F.2d 869 (6th Cir. 1990) ("The FTCA clearly provides that the United States is the only proper defendant in a suit alleging negligence by a federal employee").

A constitutional civil rights claim is not cognizable in an FTCA lawsuit. FDIC v. Myer, 510 U.S. 471, 477-79 (noting that a constitutional tort claim is not cognizable in an FTCA lawsuit because the United States has not waived its sovereign immunity with respect to constitutional tort allegations); Blanchard v. United States, No. 2:14cv58, 2015 WL 4107311, at 13 (N.D.W. Va. July 7, 2015), aff'd 622 F. App'x 287 (4th Cir. 2015) (per curiam) (unpublished) (finding that a civil rights claim alleging a violation of the Eighth Amendment prohibition against cruel and unusual punishment is not actionable against the United States in an FTCA lawsuit because a constitutional tort claim is not cognizable under the FTCA.

A number of statutory exceptions apply to the Federal Tort Claims Act, including an exception for any discretionary function, or for any damages related to establishment of a quarantine:

> The provisions of this chapter and section 1346(b) of this title shall not apply to--
> (a) Any claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.
>
> . . . .
>
> (f) Any claim for damages caused by the imposition or establishment of a quarantine by the United States.

28 U.S.C.A. § 2680.

### D.    Motions to Dismiss

Federal Rule of Civil Procedure 12(b)(6) permits dismissal of a case when a complaint fails to state a claim upon which relief can be granted. The Federal Rules of Civil Procedure require only, "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). Courts long have cited, "the accepted rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley, 355 U.S. at 45-46.

Plaintiff's complaint was filed *pro se* and therefore the Court must liberally construe his pleadings. Estelle v. Gamble, 429 U.S. 97, 106 (1976); Haines v. Kerner, 404 U.S. 519, 520 - 1 (1972) (per curiam); Erickson v. Pardus, 551 U.S. 89, 94, 127 S.Ct. 2197 (2007). Although a complaint need not contain detailed factual allegations, a plaintiff's

9

obligation in pleading, "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do...." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). Accordingly, "[f]actual allegations must be enough to raise a right to relief above the speculative level," to one that is "plausible on its face." Id. at 555, 570. In Twombly, the Supreme Court found that, "because the plaintiffs [ ] have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." Id. at 570. Thus, to survive a motion to dismiss, a plaintiff must state a plausible claim in his complaint which is based on cognizable legal authority and includes more than conclusory or speculative factual allegations.

"[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." Ashcroft v. Iqbal, 556 U.S. 662, 679, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," because courts are not bound to accept as true a legal conclusion couched as a factual allegation. Id. at 678. "[D]etermining whether a complaint states a plausible claim . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 679. Thus, a well-pleaded complaint must offer more than, "a sheer possibility that a defendant has acted unlawfully," in order to meet the plausibility standard and survive dismissal for failure to state a claim. Id. at 678.

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding facts, the merits of a claim, or the applicability of defenses." Republican Party of North Carolina v. Martin, 980 F.2d 943, 952 (4th Cir. 1992) (citing 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and

Procedure § 1356 (1990)). In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. Mylan Labs, Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993); see also Martin, 980 F.2d at 952.

## IV.   ANALYSIS

As recognized by the Supreme Court in Brownback v. King, 141 S. Ct. at 746, an FTCA claim is actionable if it alleges the six elements of 28 U.S.C. § 1346(b), which are that the claim be: (1) against the United States; (2) for money damages; (3) for injury or loss of property, or personal injury or death; (4) caused by the negligent or wrongful act or omission of any employee of the Government; (5) while acting within the scope of his office or employment; (6) under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

### A.   The Discretionary Function Exception

Plaintiff asserts that he was injured when BOP failed to implement the Guidance on AGPs at FCI Gilmer; "chose to make no effort to mitigate the spread of COVID-19", and "chose to conceal[7] the [Guidance on] AGPs that [was] enacted on 5/8/2020" from him and the FCI Gilmer inmate population. ECF No. 1 at 14. Defendant's motion to dismiss argues that the discretionary function exception to the FTCA excludes the United States from liability for such a claim. ECF No. 23, 24. Defendant also asserts that the quarantine exception to the FTCA excludes the United States from liability, because the

---

[7] Plaintiff further alleges that Clinical Director McCoy, DO., Assistant Health Services Administrator Ms. Thomas, unknown Health Services Administrator, former Warden Mr. Hudgins, and Warden Mr. Wolfe in bad faith concealed the BOP Guidance on AGPs. ECF No. 1 at 17.

11

United States has not waived its sovereign immunity in relation to quarantine situations. ECF No. 24 at 8.

The undersigned finds that the discretionary function exception precludes Plaintiff from relief. The Fourth Circuit has previously recognized that when the Government argues that the discretionary function exception applies, it is essentially an assertion that the court lacks subject matter jurisdiction. Tyree v. United States, 814 F. App'x 762, 766 (4th Cir. 2020). The undersigned agrees with Defendant's argument that the discretionary function exception applies here, rendering this court without jurisdiction to address Plaintiff's claims.

The discretionary function exception is codified in subsection (a) of the exceptions statute:

> The provisions of this chapter and section 1346(b) of this title shall not apply to—(a) Any claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.

28 U.S.C. § 2680.

### 1. The First Prong of Blanco Ayala

In Blanco Ayala v. United States, 982 F.3d 209, 214–15 (4th Cir. 2020), the Fourth Circuit summarized the analysis which must be performed to determine whether the discretionary function exception bars an FTCA claim:

> To determine whether the exception applies, we must first ascertain whether the acts in question "are discretionary in nature," such that they "involv[e] an element of judgment or choice." *United States v. Gaubert*, 499 U.S. 315, 322, 111

> S.Ct. 1267, 113 L.Ed.2d 335 (1991) (quoting *Berkovitz v. United States*, 486 U.S. 531, 536, 108 S.Ct. 1954, 100 L.Ed.2d 531 (1988)). The exception does "not apply when a federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow." *Berkovitz*, 486 U.S. at 536, 108 S.Ct. 1954.
>
> Second, we must determine whether the challenged "governmental actions and decisions" were "based on considerations of public policy." *Id.* at 537, 108 S.Ct. 1954. When statutes, regulations, or agency guidelines grant discretion to a government agent, "it must be presumed that the agent's acts are grounded in policy when exercising that discretion." *Gaubert*, 499 U.S. at 324, 111 S.Ct. 1267. In conducting this analysis, we do not "inquire whether policy considerations *were actually* contemplated in making a decision." *Smith v. Wash. Metro. Area Transit Auth.*, 290 F.3d 201, 208 (4th Cir. 2002). Rather, we consider only whether "the nature of the challenged decision in an objective, or general sense, ... is one which we would expect inherently to be grounded in considerations of policy." *Baum*, 986 F.2d at 721.

As to the first prong articulated in Blanco Ayala, the Supreme Court has stated that "conduct cannot be discretionary unless it involves an element of judgment or choice." Berkovitz by Berkovitz v. United States, 486 U.S. 531, 536 (1988). Further, "if the employee's conduct cannot appropriately be the product of judgment or choice then there is no discretion in the conduct for the discretionary function exception to protect." Id. "The requirement of judgment or choice is not satisfied if a 'federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow,' because 'the employee has no rightful option but to adhere to the directive.'" United States v. Gaubert, 499 U.S. 315, 322 (1991) (*quoting* Berkovitz).

Thus, to meet the first prong of the Blanco Ayala analysis, the Plaintiff must establish that the Government's agents, whom he accuses of negligence, were not performing a discretionary function at the time he alleges he was injured, and instead

13

were performing a mandatory course of action pursuant to statute, regulation, or policy. However, it is clear that Plaintiff is unable to demonstrate either.

Although Plaintiff claims that he has established subject matter jurisdiction because a waiver of sovereign immunity exists in his case, Plaintiff arguments do not support his claims that BOP employees' actions did not involve any discretionary function. Three examples are instructive: (1) Plaintiff quotes at length from the "BOP Guidance of Aerosol Generating Procedures (AGPs)" dated May 8, 2020[8] [ECF Nos. 1 at 11 – 13, 28 at 5 – 10, 14 – 15]. The Guidance, in outlining the general principles, reads, "Determine whether the AGP is medically necessary. The risk of the procedure given the current situation should be weighed against the risk of temporary discontinuation. . . If the procedure is deemed medically necessary, implement strategies to mitigate the risk of exposure to other inmates and staff." [https://www.bop.gov/foia/docs//COVIDAerosolGuidanceMay8.pdf at 5]; (2) Plaintiff argues that FCI Gilmer medical staff "deem[ed] it medically necessary" to permit Plaintiff to keep his CPAP machine [ECF No. 28 at 14]; and (3) Plaintiff contends that his claims against FCI Gilmer medical staff took place in the general population housing units, and thus quarantine exceptions do not apply. Id. Plaintiff's arguments show that BOP employees must exercise discretion when they: (1) determine whether an action is medically necessary, and weigh the current situation against possible risks; (2) deem whether it is medically necessary for an inmate to have a medical device; and (3) determine inmate cell placements in either the general population or a medically

---

[8] Attached to Plaintiff's complaint is a copy of the May 8, 2020, "BOP Guidance on Aerosol Generating Procedures (AGPs)". ECF No. 1-2 at 14. That document bears the handwritten notation "Tommy Goodson FTCA Appendix 14". Id. Plaintiff does not quote from the updated May 11, 2020, Guidance. https://www.bop.gov/foia/docs//COVIDAerosolGuidanceMay8.pdf at page 5. However, in some of his pleadings, Plaintiff does acknowledge the May 11, 2020, updated Guidance. ECF No. 1-2 at 12.

14

segregated population.

Additionally, as discussed more fully in Section B below, the Federal Tort Claims Act statute explicitly excludes claims "for damages cause by the imposition or establishment of a quarantine by the United States." 28 U.S.C. § 2680(f).

Moreover, a review of the Guidance on AGPs shows that the language through the Guidance is discretionary, not mandatory. Throughout the updated May 11, 2020, Guidance, these words and phrases appear in the following frequency:

(1) "should" appears 22 times;

(2) "must" appears 6 times;

(3) "may" appears 4 times; and

(4) "when possible" appears once.

See https://www.bop.gov/foia/docs//COVIDAerosolGuidanceMay8.pdf at 5 – 7. The six mandatory directives of "must" are as follows:

(1) "[S]trong consideration must be taken to minimize the use of AGPs as much as possible" [Id. at 5];

(2) "If a nebulizer must be used. . ." [Id.];

(3) "Room and equipment must be disinfected when finished" [Id. at 6];

(4) "Room and equipment must be disinfected prior to allowing a new patient to occupy a room previously used by a CPAP/BiPAP user." [6]

(5) "CPAP/BiPAP must be set up and used with a full-face, non-vented CPAP mask with an inline viral filter." [Id.]; and

(6) "Room and equipment must be disinfected prior to allowing a new patient to occupy a room previously used by a CPAP/BiPAP user." [Id. at 7].

As to the fifth of these instances, which Plaintiff argues merits relief[9], the next bullet point of the Guidance provides, "***If the recommended setup is not readily obtainable***, the humidifier chamber should be removed from the device when possible or the device be used without humidification." Id. (emphasis added). The discretionary language of the Guidance clearly contains alternatives for consideration and implementation, including as it relates to availability of full-face, non-vented CPAP mask with an inline viral filter. For all these reasons, it appears that regardless of the date of implementation of the Guidance, BOP employees retained discretion thereunder in how to implement that Guidance. Because BOP employees maintained discretion which involved an element of judgment or choice in their actions, Plaintiff cannot meet the first prong of the Blanco Ayala test.

### 2. The Second Prong of Blanco Ayala

As to the second prong of the Blanco Ayala test, Plaintiff is also incapable of demonstrating that he is entitled to relief. The FTCA's discretionary function exception only applies to discretionary conduct that is based on social, economic, or political goals. Where an established government policy—such as the BOP policies related to the provision of suitable quarters for inmates, and for the safekeeping, care, and subsistence of all persons charged with or convicted of offenses against the United States—allows a government agent to exercise discretion, "it must be presumed that the agent's acts are grounded in policy when exercising that discretion." Gaubert, 499 US at 324. Therefore, a complaint cannot survive a motion to dismiss unless it alleges facts that would support

---

[9] Although Plaintiff did not allege this in his initial complaint, in Plaintiff's Response to Defendant's motion to dismiss, he asserted that FCI Gilmer medical staff determined that he needed to continue to use his CPAP machine, but failed to provide him with a non-vented CPAP mask or any inline viral filters during the duration of the pandemic. ECF No. 28 at 9.

a finding that "the challenged actions are not the kind of conduct that can be said to be grounded in the policy of the regulatory regime." Id. at 324 – 25. Congress in enacting 18 U.S.C. § 4042, granted to BOP employees discretion with respect to how to best ensure the safekeeping, care, and subsistence for all inmates in their suitable quarters. Such responsibility is based on the considerations of public policy related to inmate safety and welfare. Accordingly, the decision of BOP staff related to accommodation of inmates, falls within the discretionary function exception to the FTCA. To the extent that the Plaintiff alleges that BOP employees' actions were negligent as relates to the accommodation of inmates at FCI Gilmer, or the implementation of the Guidance in response to the COVID-19 pandemic, the discretionary function applies, and the United States is immune from liability for the Plaintiff's complaint. Because Defendant is immune from suit under the Federal Tort Claims Act when the act or omission complained of is covered by the discretionary function exception, Plaintiff's complaint fails. Even if Plaintiff demonstrated that he meets all six prongs to assert a cause of action under the FTCA and Brownback, his claim still fails.

      **B.    The Quarantine Exception Under 28 U.S.C. § 2680(f)**

Further, it appears that BOP employees must engage in a discretionary function in determining whether and when to implement a quarantine, and what steps to take related to the same. The BOP is charged with the discretionary duty of care to maintain order within its facilities pursuant to 18 U.S.C. § 4042. That statute provides in pertinent part, that, "[t]he Bureau of Prisons under the direction of the Attorney General, shall . . . provide suitable quarters and provide for the safekeeping, care, and subsistence of all persons charged with or convicted of offenses against the United States." However, as the Fourth

Circuit has held, "decisions relating to the accommodation of inmates, such as cell assignments, are the type of day-to-day judgments that rest firmly in the discretion of prison officials." Veney v. Wyche, 293 F.3d 726, 733 (4th Cir. 2002). Accordingly, decisions made by BOP officials related to the accommodation of inmates rest firmly within the discretionary function of those officials.

Further, the BOP, like the rest of the country, indeed the world, imposed a quarantine on or around March 2020, to address the global COVID-19 pandemic. The imposition of a quarantine is expressly listed in 28 U.S.C. § 2680(f) as an area where the Government maintains its sovereign immunity. Accordingly, even if Plaintiff were able to demonstrate that he meets the six elements for an FTCA claim under the Brownback test, his claim is still subject to dismissal, because the Government maintains sovereign immunity.

As set forth above, BOP employees must use discretion when they determine whether and when to implement a quarantine. Accordingly, when BOP employees determined whether and when to implement a quarantine at FCI Gilmer, such decisions were firmly within the discretionary function, and thus Plaintiff's claims on those grounds lack subject matter jurisdiction. Moreover, Plaintiff's claims are also without merit because the Government is immune from suit for any claim related to a quarantine. Pursuant to 28 U.S.C. § 2680(f), "The provisions of [a]ny claim for damages cause by the imposition or establishment of a quarantine by the United States."

For all of these reasons, the undersigned finds that the District Court lacks subject matter jurisdiction to consider this matter. When subject-matter jurisdiction does not exist, "the only function remaining to the court is that of announcing the fact and dismissing the

Case 3:22-cv-00141-GMG   Document 34   Filed 05/01/23   Page 19 of 20   PageID #: 208

cause." Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 118 S.Ct. 1003, 1012–16 (1998); Reinbold v. Evers, 187 F.3d 348, 359 n.10 (4th Cir. 1999).

## V. RECOMMENDATION

For the foregoing reasons, the undersigned **RECOMMENDS** that Plaintiff's complaint as to the United States of America be **DISMISSED WITHOUT PREJUDICE** for lack of subject matter jurisdiction.

It is further **RECOMMENDED** that Defendant's motion to dismiss [ECF No. 18] be **GRANTED.**

**Within fourteen (14) days** after being served with a copy of this Recommendation, any party may file with the Clerk of the Court, **specific written objections, identifying the portions of the Report and Recommendation to which objection is made, and the basis of such objection.** A copy of such objections should also be submitted to the Honorable Gina M. Groh, United States District Judge. Objections shall not exceed ten (10) typewritten pages or twenty (20) handwritten pages, including exhibits, unless accompanied by a motion for leave to exceed the page limitation, consistent with LR PL P 12.

**Failure to file written objections as set forth above shall constitute a waiver of de novo review by the District Court and a waiver of appellate review by the Circuit Court of Appeals.** Snyder v. Ridenour, 889 F.2d 1363 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).

This Report and Recommendation completes the referral from the district court. The Clerk is directed to terminate the Magistrate Judge's association with this case.

The Clerk is directed to provide a copy of this Report and Recommendation to the *pro se* Plaintiff by certified mail, return receipt requested, to his last known address as reflected on the docket sheet, and to all counsel of record, as applicable, as provided in the Administrative Procedures for Electronic Case Filing in the United States District Court for the Northern District of West Virginia.

DATED: May 1, 2023

/s/ *Robert W. Trumble*
ROBERT W. TRUMBLE
UNITED STATES MAGISTRATE JUDGE